IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 1:25-cv-04046-RBJ

JUAN VENCES NUNEZ,

      Petitioner,

v.

KRISTI NOEM, PAMELA BONDI,
TODD LYONS, ROBERT G. HAGAN,
JUAN BALTAZAR,
in their official capacities,

      Respondents.

## ORDER

Before the Court is petitioner Juan Vences Nuñez's (petitioner or Mr. Vences Nuñez) Verified Petition for a Writ of Habeas Corpus (Petition). ECF No. 1.[1] Petitioner seeks an order granting his immediate release, or, in the alternative, a bond hearing within seven days. *Id.* at 11. Respondents filed a brief in opposition to the requested relief. ECF No. 8. Petitioner replied. ECF No. 9.

---

[1] This Court previously granted Mr. Vences Nuñez's Petition to the extent that it prohibited respondents from transferring him away from the District of Colorado or removing him from the United States until the termination of this case. ECF No. 4.

1

For the reasons set forth herein, the Petition is GRANTED to the extent that Respondents are ordered to bring Mr. Vences Nuñez before an Immigration Judge within seven (7) days of this Order for a bond hearing. At that bond hearing, the government must bear the burden of justifying Mr. Vences Nuñez's continued detention by clear and convincing evidence.

## BACKGROUND

For the purposes of this Order, the Court assumes the truth of the facts in the Petition. Petitioner is a 47-year old Mexican national who last entered the United States without inspection almost 20 years ago and has been living here ever since. ECF No. 1 at ¶ 2. Although he has "no prior significant criminal history," he was arrested on November 11, 2025 by U.S. Immigration and Customs Enforcement (ICE) and initially detained in Florida. *Id.* Subsequently, he was transferred to the Denver Contract Detention Facility in Aurora, Colorado where he remains. *Id.*

Significantly, respondents do not allege that petitioner is subject to mandatory detention under any provision of the Immigration and Nationality Act (INA) *other* than 8 U.S.C. § 1225(b)(2)(A). Therefore, there is no material dispute about the facts, and the resolution of this case turns squarely on whether petitioner's detention is governed by § 1225(b)(2)(A), or by a separate provision of the INA that provides for discretionary release during removal proceedings, 8 U.S.C. § 1226(a).

2

## ANALYSIS

A district court may grant a writ of habeas corpus to any person who demonstrates that he is "in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2241.  The individual in custody bears the burden of proving that his detention is unlawful.  *Walker v. Johnston*, 312 U.S. 275, 286 (1941).  Where, as here, the briefing demonstrates that the petitioner's challenge is fundamentally legal in nature, the court need not hold an evidentiary hearing to resolve it.  *See* 28 U.S.C. § 2243.

### Petitioner's Detention is Governed by § 1226(a)

As noted above, this case concerns whether petitioner, who entered the United States without inspection many years ago and has remained here, is subject to mandatory detention under § 1225(b)(2)(A) or instead is entitled to a bond hearing under § 1226(a).

This Court has addressed this same question of statutory interpretation on multiple occasions.  *See, e.g.*, *Cervantes Arredondo v. Baltazar*, 25-cv-03040-RBJ (D. Colo. Oct. 31, 2025) (ECF No. 21); *Velazquez de Leon v. Baltazar*, 25-cv-03805-RBJ (D. Colo. Dec. 12, 2025) (ECF No. 19).  Most recently, the Court set forth its full analysis in *Ugarte Hernandez v. Baltazar*, 1:25-cv-04066-RBJ (D. Colo. Jan. 15, 2026) (ECF No. 16).

In this case, the Court incorporates by reference and adopts in full the analysis set forth in *Ugarte Hernandez*. *See, e.g.*, *Espinoza Ruiz v. Baltazar*, 1:25-cv-03642-CNS, 2025 WL 3294762, at *2 (D. Colo. Nov. 26, 2025) (district court, on the same statutory question, "accept[ing] in full" and "adopt[ing]" its reasoning outlined in a previous case).

Accordingly, the Court finds that petitioner's detention is properly governed by § 1226(a), his current mandatory detention under § 1225(b)(2)(A) is unlawful, and he is therefore entitled to habeas relief. In this case, that relief is a prompt bond hearing before an Immigration Judge. *See Nava Hernandez v. Baltazar,* 1:25-cv-03094-CNS, 2025 WL 2996643, at *8 (D. Colo. Oct. 24, 2025) ("Section 1226(a) does not require release—it provides DHS the discretion to grant a [noncitizen] release on bond"); *see also Cervantes Arredondo,* ECF No. 21, at *8 (ordering a bond hearing); *Velazquez de Leon,* ECF No. 19, at *8 (same).

### **Respondents Bear the Burden of Proof at Petitioner's Bond Hearing**

At that bond hearing, respondents will bear the burden of proof by clear and convincing evidence to justify petitioner's continued detention. The Court acknowledges that, under normal circumstances, the noncitizen bears the burden of proof at a bond hearing under § 1226(a). *See Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006); 8 C.F.R. § 236.1(c)(8). However, these are "not normal circumstances." *Velasquez Salazar v. Dedos*, 1:25-

4

cv-00835-DHU-JMR, ---F.Supp.3d---, 2025 WL 2676729, at *6 (D.N.M. Sept. 17, 2025). Respondents have mandatorily detained the petitioner for several months under the wrong statute, violating his due process rights. *See, e.g.*, *Velasquez Salazar*, 2025 WL 2676729, at *5; *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 785 (E.D. Mich. 2025); *Garcia Abanil v. Baltazar*, 25-cv-4029-WJM-STV, 2026 WL 100587, at *7 (D. Colo. Jan. 14, 2026).

In finding that, under these circumstances, due process demands a burden-shifted hearing, the Court rejoins the clear weight of authority in this District. *See, e.g.*, *Cervantes Arredondo,* ECF No. 21, at *8-9*; Velazquez de Leon,* ECF No. 19, at *8; *Garcia Abanil*, 2026 WL 100587, at *8; *Arauz v. Baltazar*, 1:25-cv-03260-CNS, 2025 WL 3041840, at *3 (D. Colo. Oct. 31, 2025); *Loa Caballero v. Baltazar*, 25-cv-03120-NYW, 2025 WL 2977650, at *9 (D. Colo. Oct. 22, 2025); *Mendoza Gutierrez v. Baltasar*, 25-cv-2720-RMR, 2025 WL 2962908, at *10 (D. Colo. Oct. 17, 2025); *see also Velasquez Salazar*, 2025 WL 2676729, at *6-*7.

This conclusion is compelled by application of the familiar three-factor due process balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under this test, courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the fiscal and

5

administrative burdens that the additional or substitute procedures would entail." *Id.* at 335.[2]  All three of these factors tip in petitioner's favor.

Starting with the first factor, "petitioner's interest affected by the official action is the most significant interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020).  Here, that interest is particularly acute because, as other courts in this District have recognized, immigration detention at the Denver Contract Detention Facility is "more akin to incarceration than civil confinement." *L.G. v. Choate*, 744 F.Supp.3d 1172, 1182 (D. Colo. 2024) (citing *Daley v. Choate*, 22-cv-03043-RM, 2023 WL 2336052, at *4 (D. Colo. Jan. 6, 2023)).

The Court recognizes that, as a general matter, "detention during deportation proceedings is [ ] constitutionally valid," and that Congress may enact rules for noncitizens "that would be unacceptable if applied to citizens." *Demore v. Kim*, 538

---

[2] The Tenth Circuit has not addressed the appropriate framework for determining what procedures comply with constitutional due process in this context.  *See Garcia Abanil*, 2026 WL 100587, at *8.  Rather than the *Mathews* balancing test, some courts in this District have instead of, or in addition to, employed the test developed for and used in cases involving "involuntary civil detention pending trial or mental health treatment" in, for instance, *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997), and *United States v. Salerno*, 481 U.S. 739, 746 (1987), and *Addington v. Texas*, 441 U.S. 418, 425 (1979).  *See, e.g.*, *Diaz-Ceja v. McAleenan*, 19-cv-00824-NYW, 2019 WL 2774211 (D. Colo. Jul. 2, 2019).  Under that test, "[t]he court begins by considering the government's and the individual's respective interests, and then consider[s] whether the existing process adequately balanced and protected the two." *Id.* at *9.  The Court finds that this test is substantively similar to the *Mathews* test and would dictate the same result here.  *See Velasquez Salazar*, 2025 WL 2676729, at *6 (concluding that "regardless of which test is utilized here, because this cases involves a continuing constitutional violation, the Government should bear the burden of showing that Petitioner's continued detention is appropriate").

U.S. 510, 521, 523 (2003) (internal quotation marks and citations omitted). Nevertheless, "the fact that some detention is permissible does not change the fact that [petitioner] suffers significant liberty deprivations," where, as here, the government has erroneously held him in mandatory detention in contravention of his statutory right to a bond hearing. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021).

And although petitioner's detention has been relatively brief, "[t]his Court need not wait another six, twelve, or eighteen months to determine the first *Mathews* factor weighs in [p]etitioner's favor." *Velasquez Salazar*, 2025 WL 2676729, at *7 (finding that first *Mathews* factor cut in petitioner's favor although he had only been detained "less than three months"). Due process concerns and the required procedural protections in this context are not limited to "cases of prolonged detention." *Id.* The extraordinary weight of this liberty interest, coupled with the ongoing due process violation, counsel against a procedural scheme that presumes continued detention without requiring the government to justify it.

The second *Mathews* factor—"the risk of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"—also weighs in petitioner's favor. 424 U.S. at 335. This inquiry focuses on the "risk of error inherent in the truth-finding process," viewed primarily from the perspective of the detained individual, and assessed both the

7

adequacy of the existing procedures and the value of the proposed alternatives through that lens. *See Velasco Lopez*, 978 F.3d at 852.

Initially, allocating the burden of proof to petitioner would require him to prove that he is neither a flight risk nor a danger to the community—an inherently difficult proposition. *Hernandez-Lara*, 10 F.4th at 31 ("As a practical matter it is never easy to prove a negative.") (citing *Elkins v. U.S.*, 364 U.S. 206, 218 (1960)). That difficulty is compounded by the realities of immigration detention, where individuals necessarily have limited resources, time, and ability to compile evidence on their own behalf. *See Hernandez-Lara*, 10 F.4th at 30. As a result, requiring petitioner to bear the burden of proof meaningfully increases the risk of erroneous deprivation of liberty. *See id.* at 31 ("For all of these reasons, a detainee often starts out behind the eight ball in a bond proceedings, and the opportunities for prejudicial error abound.").

By contrast, "[t]he government, with its extensive resources and expertise in immigration law, is better equipped to properly collect and present evidence that would allow an IJ to determine whether [p]etitioner is a flight risk or danger to the community." *Alfaro Herrera v. Baltazar*, 1:25-cv-04014-CNS, 2026 WL 91470, at *11 (D. Colo. Jan. 13, 2026). For instance, the government has "computerized access to numerous databases and to information collected by DHS, DOJ, and the FBI, as well as information in the hands of state and local authorities." *Velasco*

8

*Lopez*, 978 F.3d at 853.  It has also already gathered information relevant to petitioner's custody determination in the course of removal proceedings that have been ongoing for approximately two months now.  Accordingly, the "odds of error" in a bond hearing "are likely reduced by placing the burden on the government." *Hernandez-Lara*, 10 F.4th at 31.

Finally, the third *Mathews* factor, "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail," also cuts in petitioner's favor.  424 U.S. at 335.  The government's interest in detaining noncitizens during removal proceedings to ensure they do not abscond or endanger the community is "well-established and not disputed."  *Velasco Lopez*, 978 F.3d at 854.  However, the government plainly has no "interest in ensuring the detention of noncitizens who are neither dangerous nor a risk of flight," and indeed has an interest "in minimizing the enormous impact of incarceration in cases where it serves no purpose."  *Alfaro Herrera*, 2026 WL 91470, at *11 (internal citation omitted).

Shifting the burden to the government does no harm to these interests.  As noted above, the government has already been required to bear the burden in numerous bond hearings ordered by courts in this District and throughout the country arising from this same procedural context.  There is no indication that doing so has impaired the government's ability to adequately protect the constitutionally

9

recognized purposes of immigration detention. In any event, a government attorney would attend petitioner's hearing "and marshal evidence of any possible danger or flight risk," rendering any additional administrative or fiscal burden negligible. *Id.*

To be clear, the Court does not hold that noncitizens in removal proceedings are always entitled to a burden-shifted bond hearing. Habeas corpus is "an adaptable remedy, the precise application and scope of which changes depending on the circumstances." *Velasco Lopez*, 978 F.3d at 855 (internal quotation marks and citations omitted); *see also Velasquez Salazar*, 2025 WL 2676729, at *9 (emphasizing that the court, in ordering the alternative bond procedures to remedy erroneous mandatory detention, was not announcing a bright-line rule). "The equitable and flexible nature of habeas relief also gives the reviewing court considerable latitude to correct errors that occurred during the prior proceedings." *Velasco Lopez*, 978 F.3d at 855 (internal citations omitted). Here, the Court concludes that the remedy ordered is necessary, in part, to correct respondents' prolonged and erroneous classification of petitioner's detention under § 1225(b)(2)(A) in violation of due process.

## ORDER

It is hereby ORDERED that:

Petitioner's Petition for a Writ of Habeas Corpus, ECF No. 1, is GRANTED.

Respondents SHALL NOT REMOVE petitioner from the District of Colorado or the United States unless or until this Court or the Court of Appeals for the Tenth Circuit vacates this Order or the case is terminated.

Respondents SHALL, within ten (10) days of this ORDER, provide petitioner with an individualized bond hearing before an Immigration Judge at which the government bears the burden to justify detention by clear and convincing evidence.

The parties SHALL file a joint status report within five (5) days of petitioner's bond hearing, stating whether he has been granted bond, and, if his request for bond was denied, the reasons for that denial.

Dated: January 16, 2026            BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Court Judge